# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 22-CV-05722 (FB) (RER)

———————————

### JOSHUA ADAMS

VERSUS

### 8618-8620 THIRD AVENUE REALTY CORP., AND COMEAU GROUP, INC.

———————————

**REPORT & RECOMMENDATION**

July 28, 2023

———————————

**TO THE HONORABLE JUDGE FREDERIC BLOCK
SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Joshua Adams ("Plaintiff") brought this action against Defendants 8618-8620 Third Avenue Realty Corp. and Comeau Group, Inc. (collectively, "Defendants") after encountering physical barriers that restricted his access to a restaurant that is owned and operated by Defendants. (*See generally* ECF No.1 ("Compl.")). Plaintiff seeks injunctive relief and attorney's fees and costs pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the ADA Accessibility Guidelines 28 C.F.R. Part 36 ("ADAAG"). (*Id.*) When Plaintiff moved for default judgment (ECF No. 14 ("Mot. Default J.")), Your Honor referred the Motion to me for a Report and Recommendation (Electronic Order dated 2/06/2023). After carefully reviewing the record,

1

and for the reasons set forth herein, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted.[1]

## BACKGROUND

I. Factual Background

Plaintiff is a resident of Brooklyn, New York. (Compl. ¶ 2). He is bound to ambulate in a wheelchair after being born with spina bifida and hydrocephalus. (*Id.*). Plaintiff contends to be a qualified individual with disabilities under the ADA. (*Id.* ¶ 2). Defendant Comeau Group, Inc. is the corporate lessee and operator of the business known as H0-BRAH, which is located at 8618 3rd Avenue, 1st Floor and Basement, Brooklyn, New York 11209 (the "Facility"). (*Id.* ¶ 4). Defendant 8618-8620 Third Avenue Realty Corp. is the corporate owner of the real property located at the same address. (*Id.* ¶ 3). Plaintiff alleges that the Facility qualifies as a place of "public accommodation" and a "service establishment" under the ADA. (*Id.* ¶ 7).

Plaintiff contends that when he visited the Facility, he encountered architectural barriers that limited his access to the Facility and the goods and services offered therein. (*Id.* ¶¶ 8, 11). For example, Plaintiff encountered an inaccessible entrance at the Facility where a step was present without a required ramp. (*Id.* ¶ 14(I)). In total, Plaintiff's Complaint describes twenty-four ADA violations, including the entrance's doorknob, which requires "twisting of the wrist," and an inaccessible and noncompliant bar, dining tables, booth tables, floor space, counters, restrooms, lavatories, and water closets. (*Id.* ¶ 14(I)–(XXIV)).

Accordingly, Plaintiff asserts that Defendants failure to make the Facility fully accessible has resulted in discrimination against Plaintiff and other people with disabilities. (*Id.* ¶ 13). As a result,

---

[1] Abigail Farias, a second-year student at the Maurice A. Deane School of Law at Hofstra University and an intern in my Chambers, provided substantial assistance in researching and drafting this Report and Recommendation.

Plaintiff has experienced "irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations." (*Id.* ¶ 17). Plaintiff claims the removal of the physical barriers can be readily achieved without much difficulty or expense. (*Id.* ¶ 16). Although Plaintiff alleges that he "intends to visit the Facility again in the near future" to use the goods and services it offers, the Facility's physical barriers and ADA violations may prevent his ability to do so. (*Id.* ¶ 12).

II. Procedural History

Plaintiff commenced this action on September 23, 2022. (*See* Compl.) Defendants were served via the New York Secretary of State on September 26, 2022. (ECF Nos. 8–9). The time for Defendants to answer the Complaint expired on October 17, 2022. (ECF Nos. 8–9). Plaintiff subsequently requested Certificates of Default against Defendants on December 21, 2022 (ECF Nos. 10–11), and the Clerk of Court made an entry of default against each Defendant on December 28, 2022 (ECF Nos. 12–13).

Plaintiff then filed this Motion for Default Judgment. (Mot. Default J.). In support, Plaintiff filed a notice of motion (ECF No. 14-1), a proposed judgment (ECF No. 14-2), copies of the certificates of default against Defendants (ECF Nos. 14-3, 14-4), proof of service of process (ECF Nos. 14-5, 14-6), and a memorandum of law (ECF No. 15 ("Pl. Mem.")).[2] Additionally, Plaintiff

---

[2] Local Civil Rule 55.2(b) requires that a party requesting default judgment supplement their application with "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Loc. Civ. R. 55.2(b). Courts have discretion to excuse a plaintiff's failure to strictly comply with Rule 55.2(b). *See, e.g.*, *United States v. Kumar*, No. 19-CV-4501 (ENV) (VMS), 2021 WL 7908019, at *7 (E.D.N.Y. Mar. 19, 2021) (recommending that district court overlook plaintiff's failure to attach copy of the complaint when the motion for default judgment "provided sufficient notice of the claims asserted against Defendant"), *supplemented by* 2021 WL 7908013 (Mar. 29, 2021). Although Plaintiff neglected to append a copy of the Complaint with their application, because the Motion otherwise detailed all claims (*see* Mot. Default J. ¶¶ 6–11), the Court finds that Plaintiff sufficiently complied with Rule 55.2(b).

attached a certificate of service with the Motion for Default Judgment and memorandum of law, indicating that Defendants were each mailed a copy of "the foregoing document" at their place of business via USPS priority mail.[3] (Mot. Default J. at 18; Pl. Mem at 11). In the Motion for Default Judgment, Plaintiff seeks injunctive relief requiring Defendants to make the Facility accessible to individuals with disabilities, including Plaintiff, and for the Court to order the Facility closed until the requisite modifications are completed. (Mot. Default J. ¶ 7). Plaintiff also seeks attorney's fees and costs, but requests that Plaintiff have until 180 days after entry of a default judgment to make a motion for such relief. (*Id.* ¶ 11).

## DISCUSSION

I. Legal Standard

   A.  Default Judgment Standard

Federal Rule of Civil Procedure 55 establishes "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, after a party's failure to plead or otherwise defend is established by evidence or affidavit, the Clerk of the Court

---

[3] Both certificates of service state that the documents were mailed to Defendant 8618-8620 Third Avenue Realty Corp. at "8618-8620 3RD AVENUE, BROOKLYN, NY, 11209" and to Defendant Comeau Group Inc. at "8618 3RD AVENUE, BROOKLYN, NY, 11209." (Mot. Default J. at 18; Pl. Mem. at 11). These addresses match Defendants' business addresses listed on the New York Secretary of State's website. *See* Dep't of State, Div. of Corps., State Records & UCC, Corp. & Bus. Entity Database Searches, https://apps.dos.ny.gov/publicInquiry/; *see also J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171 (AMD) (SJB), 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 9, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.").

By mailing the primary motion papers (*see* Mot. Default J. (describing basis for granting default judgment, procedural history, legal basis for liability for allegations in the complaint, and proposed damages); Pl. Mem.) to these addresses, Plaintiff generally complied with Local Civil Rule 55.2(c), which requires plaintiff to mail "all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b)" to a corporate defendant's last known business address. Loc. Civ. R. 55.2(c). *See Gustavia Home, LLC v. Vaz*, No. 17-CV-5307 (ILG) (RER), 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019) (excusing incomplete compliance with Rule 55.2(c) when plaintiff provided fair notice of the judgment sought). Thus, because courts have broad discretion to overlook a plaintiff's failure to strictly adhere to Local Civil Rule 55.2(c), *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), and because Plaintiff provided Defendants with fair notice of the claim and judgment sought, the Court respectfully recommends that any minor deficiencies in compliance be overlooked.

must enter their default. *See* Fed. R. Civ. P. 55(a). After the entry of default, the plaintiff must then apply to the court for a default judgment pursuant to Rule 55(b)(2). *See Priestley*, 647 F.3d at 505. When granting default judgment, the court must accept as true the plaintiff's well-pleaded factual allegations, as the defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]" *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Then, the court must ultimately determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim for which relief can be granted. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Allegations as to damages do not need to be accepted as true; rather, a plaintiff must show with evidence that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159; *see* Fed. R. Civ. P. 54(c).

II. <u>Analysis</u>

   A. <u>Standing</u>

"To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (citation omitted). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504. U.S. 555, 561 (1992). "In ADA cases, 'a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act.'" *Brown v. Mermaid Plaza Assocs. LLC.*, No. 13-CV-00760 (AMD) (CLP), 2018 WL 2722454, at *5 (E.D.N.Y. Mar. 8, 2018)

(quoting *Harty v. Spring Valley Marketplace LLC*, No. 15 Civ. 8190, 2017 WL 108062, at *6 (S.D.N.Y. Jan. 9, 2017)). Therefore, a plaintiff "need not personally encounter each ADA violation within the [property] in order to seek its removal," and "once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability." *Kreisler*, 731 F.3d at 188–89 (citing *Chapman v. Pier 1 (U.S.) Imports Inc.*, 631 F.3d 939, 950–51 (9th Cir. 2011) (en banc); *Steger v. Franco, Inc.*, 228 F.3d 889, 893–94 (8th Cir. 2000)).

Plaintiff has standing under the ADA. To establish standing under the ADA, the complaint must contain "(1) allegations of past injury under the ADA, (2) allegations supporting a reasonable inference of continued discriminatory treatment, and (3) allegations supporting a reasonable inference that a plaintiff plans to return to the subject location." *Feltzin v. Stone Equities, LLC*, No. 16-CV-6457 (SJF) (AKT), 2018 WL 1115135, at *9 (E.D.N.Y. Feb. 8, 2018), *adopted by* 2018 WL 1114682 (Feb. 26, 2018). First, Plaintiff's allegations show that he was injured under the ADA by Defendants' failure to make the Facility accessible. Second, because the barriers were architectural in nature, it is reasonable to infer that the discriminatory treatment will continue without court intervention. Third, Plaintiff resides less than six miles from the Facility, passes the Facility at least once per week, dines in the neighborhood several times per month, and alleged that he plans to return to the Facility. (Compl. ¶¶ 5–6). *See Leonid Treyger v. Liberty 99 Cents Paradise Inc.*, No. 21-CV-5189 (PKC) (RER), 2022 LEXIS 72134, at *9 (E.D.N.Y. Jan. 10, 2022) (finding intention to return was plausible where plaintiff lived in close proximity to the store, enjoyed shopping in the neighborhood, and stated their intention to return); *Brown*, 2018 WL 2722454, at *6 (finding "broad" allegations sufficient to establish standing under the ADA).

B. <u>Liability</u>

Plaintiff has established liability under the ADA. To state a claim under the ADA, a plaintiff must allege: "that (1) [they are] disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

> i. *Disability*

The ADA defines a statutorily protected disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual" and lists "walking" as a "major life activity." 42 U.S.C. § 12102. According to the Complaint, Plaintiff was born with spina bifida and hydrocephalus and cannot walk. (Compl. ¶ 2). Therefore, Plaintiff is a disabled individual as set forth under the ADA, as he is substantially limited in the "major life activity" of walking.

> ii. *Public Accommodation*

Defendants own and operate the Facility as a "public accommodation and service establishment." (*Id.* ¶ 7). Under the ADA, a place of "public accommodation" is defined to include "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12181(7)(B). The Court can infer from Plaintiff's allegations in the Complaint that the referenced establishment is a restaurant. (Compl. ¶ 14(VII) (referring to dining tables and bar); Mot. Default J. ¶¶ 4, 6 (referring to the location as a restaurant)). Thus, the Facility falls within the scope of the ADA and Defendants are subject to the ADA's prohibition against discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, [and] facilities" offered to the public. 42 U.S.C. § 12182(a).

7

   *iii.* *Discrimination*

  Under the ADA, discrimination is "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Plaintiff alleges, and the Court accepts as true, that Defendants have failed to remove architectural barriers where such removal is readily achievable and "can be accomplished and carried out without much difficulty or expense." (Compl. ¶ 16). *See Hashimi v. CLMO, LLC*, No. 20-CV-1073 (DG) (RLM), 2021 WL 3478174, at *3 (E.D.N.Y. July 19, 2021) (finding plaintiff established discrimination where complaint stated, and court accepted as true, that removal of architectural barriers was "readily achievable and would not impose an undue hardship on defendant"), *adopted by* 2021 WL 3472658 (E.D.N.Y. Aug. 6, 2021); *Ross v. Royal Pizza Cafe Corp.*, No. 17-CV-6294 (FB) (RML), 2018 WL 6313208, at *3 (E.D.N.Y. Aug. 1, 2018) (same), *adopted by* 2018 WL 6313182 (Dec. 3, 2018).

  Alternatively, "[a] plaintiff can establish discrimination in violation of the ADA by showing that the defendant violated the applicable accessibility standards set forth in the ADA Accessibility Guidelines ('ADAAG')." *Hashimi*, 2021 WL 3478174, at *3 (quoting *Harty*, 2017 WL 108062, at *5). Here, Plaintiff alleges that the architectural barriers violated the ADAAG and denied him access to the Facility and the ability to avail himself of the goods and services. (Compl. ¶¶ 7, 11, 14). Therefore, the allegations in the Complaint are sufficient to establish that Plaintiff has been discriminated against within the meaning of the ADA. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551 (ENV) (LB), 2013 WL 6835157, at *4 (E.D.N.Y. Dec. 20, 2013) (accepting as true plaintiff's allegations that defendant's property did not comply with ADAAG provisions and the removal of barriers was readily achievable, and thus finding defendant liable under the ADA).

C. <u>Injunctive Relief</u>

Plaintiff seeks injunctive relief under the ADA and requests Defendants' establishment be closed pending the modification completions. (Mot. Default J. ¶ 7). When a plaintiff demonstrates that a defendant violated the ADA by failing to remove architectural barriers, plaintiff's "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). As Plaintiff's allegations are deemed true in light of Defendants' default, Defendants are liable pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv) and renovations to bring the Facility into compliance with the ADA are readily achievable. However, this Court recommends that Plaintiff's request to close the Facility be denied because it is uncertain how long the remediation would take and closing the Facility in the interim would not necessarily advance Plaintiff's goal of making the premises accessible to people with disabilities. *See O'Rourke v. Drunken Chicken in NY Corp.*, No. 19-CV-3942 (NGG) (SMG), 2020 WL 4013187, at *4 (E.D.N.Y. July 16, 2020) (denying plaintiff's request to close a restaurant until barriers were remedied when they did not indicate how long modifications would take or why they could not be made while the restaurant remained open); *Taylor v. 312 Grand St. LLC*, No. 15-CV-5410 (BMC), 2016 WL 1122027, at *4 (E.D.N.Y. Mar. 22, 2016) (declining to close a bar while architectural barriers were remedied because "shutting down . . . [the] business is not going to get plaintiff or other disabled persons access"). Instead, closing the Facility would likely deprive Defendants of the funds needed to carry out the remediation.

Having reviewed Plaintiff's proposed order (ECF No. 14-2), the nature of the violations claimed by Plaintiff, the nature of the relief required to afford redress, and the common practice in this District for awarding injunctive relief in ADA cases, the Court recommends the issuance of

an injunction. *See O'Rourke*, 2020 WL 4013187, at *5 (recognizing the "common practice in this district for awarding injunctive relief in ADA cases").

I respectfully recommend that the injunction require (1) Defendants to prepare architectural plans remedying the violations of the ADAAG described in the Complaint and provide Plaintiff's counsel with those plans for review within sixty days of any order adopting this Report and Recommendation; (2) Plaintiff to consent or seek further relief from the Court regarding those plans within thirty days of receipt; and (3) Defendants to complete the necessary alterations within sixty days after Plaintiff consents to the alterations or an order is granted on Plaintiff's request for further relief. *See Taylor*, 2016 WL 1122027, at *4 ("[T]he often-used method in this district for awarding injunctive relief in ADA cases is to require defendants to submit a compliance plan within a prescribed period of time." (citing *Shariff v. Radamar Meat Corp.*, No. 11-CV-6369 (NGG) (RML), 2014 WL 1311565, at *2 (E.D.N.Y. Mar. 31, 2014); *Beach 90th St. Realty Corp.*, 2013 WL 6835157, at *5)).

D.  Attorney's Fees and Costs

In an ADA action, the court, with its discretion, may allow the prevailing party a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. Plaintiff requested 180 days after the entry of a default judgment to make such a motion. (Mot. Default J. ¶ 11). The request to submit a motion for attorney's fees and costs six months after entry of a default judgment is reasonable here, as courts in this District prefer to evaluate such motions after the attorney can "demonstrat[e] reasonable efforts to enforce the injunction." *Grinblat v. Apna Food & Oil Corp.*, No. 19-CV-6746 (EK) (LB), 2020 WL 7481508, at *7 (E.D.N.Y. Aug. 26, 2020) (citing *Taylor*, 2016 WL 1122027, at *6), *adopted by* 2020 WL 7481327 (E.D.N.Y. Dec. 18, 2020).

10

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that Your Honor (1) grant default judgment on Plaintiff's ADA claims; (2) issue an injunction requiring Defendants to remove the architectural barriers identified by Plaintiff and make their facilities ADA compliant, as detailed above; and, (3) grant Plaintiff leave to file a motion for attorney's fees within six months of any order adopting this Report and Recommendation, and upon a showing that he has made reasonable efforts to enforce the injunction contained herein.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by personal service and regular mail at each Defendant's place of business and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Frederic Block within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

*/s/ Ramon E. Reyes, Jr.*

RAMON E. REYES, JR.
United States Magistrate Judge

Date July 28, 2023
Brooklyn, NY

11